1  JACK P. DICANIO (SBN 138782)
   Jack.DiCanio@skadden.com
2  JAMES P. SCHAEFER (SBN 250417)
   James.Schaefer@skadden.com
3  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   525 University Avenue, Suite 1400
4  Palo Alto, California 94301
   Telephone:  (650) 470-4500
5  Facsimile:   (650) 470-4570

6  Attorneys for Plaintiff and
   Counter-Defendant Criteo S.A.
7
   (Additional Counsel On Following Page)
8

9

10

11              UNITED STATES DISTRICT COURT

12              CENTRAL DISTRICT OF CALIFORNIA

13                    WESTERN DIVISION

14  CRITEO S.A.,                    )  CASE NO.: 2:16-cv-4207-SVW-MRW
                                    )
15              Plaintiff,          )  1) CRITEO S.A.'S NOTICE OF
                                    )     MOTION AND MOTION TO
16       v.                         )     DISMISS AMENDED
                                    )     COUNTERCLAIMS AND STRIKE
17  STEEL HOUSE, INC.,              )     AFFIRMATIVE DEFENSES;
                                    )
18              Defendant.          )  2) MEMORANDUM OF POINTS AND
                                    )     AUTHORITIES IN SUPPORT
19                                  )     THEREOF; and
                                    )
20  _____    )     FILED/LODGED UNDER
    STEEL HOUSE, INC.,              )     SEPARATE COVER:
21                                  )
                Counter-Claimant,   )  3) [PROPOSED] ORDER GRANTING
22                                  )     MOTION TO DISMISS AND TO
         v.                         )     STRIKE.
23                                  )
    CRITEO S.A.,                    )  Hearing Date:  November 7, 2016
24                                  )  Time:              1:30 p.m.
                Counter-Defendant.  )  Courtroom:        6
25                                  )  Judge:            Hon. Stephen V. Wilson
                                    )
26                                  )  Complaint Filed:  June 13, 2016
                                    )
27  _____    )

28

_____
Criteo S.A.'s Motion To Dismiss Amended Counterclaims And Strike Affirmative Defenses

ABRAHAM A. TABAIE (SBN 260727)
Abraham.Tabaie@skadden.com
WINSTON P. HSIAO (SBN 273638)
Winston.Hsiao@skadden.com
MATTHEW J. TAKO (SBN 307013)
Matthew.Tako@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone:   (213) 687-5000
Facsimile:   (213) 687-5600

Attorneys for Plaintiff and
Counter-Defendant Criteo S.A.

# NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 7, 2016, at 1:30 p.m., or at the nearest available date at which counsel may be heard, before the Honorable Stephen V. Wilson, in Courtroom 6 of the above-referenced Court located at 312 N. Spring Street, Los Angeles, CA 90012-4701, Criteo S.A. ("Criteo") will, and hereby does, move the Court for an order dismissing Steel House, Inc.'s (d/b/a SteelHouse ("SteelHouse")) amended counterclaims and striking SteelHouse's affirmative defenses with prejudice.

This Motion is made pursuant to Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6) for failure to state a claim and pursuant to Rule 12(f) for pleading insufficient defenses.

This Motion is based on this Notice of Motion and Motion to Dismiss SteelHouse's Amended Counterclaims and Strike Affirmative Defenses, the accompanying Memorandum of Points and Authorities, all pleadings and papers filed in this action, all matters of which this Court may take judicial notice, and such additional papers and arguments as may be presented to the Court at or in connection with the hearing on this Motion.

This Motion is made following a conference of counsel pursuant to Local Rule 7-3, which took place on September 27, 2016, more than seven days prior to the last day for filing the Motion. (*See* C.D. Cal. L.R. 7-3.)

DATED: October 4, 2016    Respectfully submitted,

By: _____*/s/ Jack P. DiCanio*_____
JACK P. DICANIO
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

Attorneys for Plaintiff and
Counter-Defendant Criteo S.A.

---

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ...................................................................i

I.    INTRODUCTION .................................................................... 1

II.   BACKGROUND ...................................................................... 4

III.  ARGUMENT............................................................................ 5

      A.    All Six Of SteelHouse's Counterclaims Should Be Dismissed .............. 5

            1.    SteelHouse Failed To State A Lanham Act Claim ...................... 7

            2.    SteelHouse Failed To State A § 17500 False Advertising Claim ................................................................. 10

            3.    SteelHouse Failed To State A UCL Claim ................................ 12

                  a.    SteelHouse Failed To Allege Unlawful Conduct.............. 13

                  b.    SteelHouse Failed To Adequately Allege Fraud.............. 13

                  c.    SteelHouse's Reliance, Causation And Damages Allegations Are Implausible................................. 13

            4.    SteelHouse Failed To State A Contract Interference Claim........ 14

                  a.    SteelHouse Failed To Allege A Valid Contractual Relationship Existed Between Itself And A Third Party  ............................................................. 14

                  b.    SteelHouse Failed To Allege A Breach ........................... 15

            5.    SteelHouse Failed To Allege A Claim For Intentional Interference With Prospective Economic Advantage................. 16

            6.    SteelHouse Fails To Allege A Trade Libel Claim....................... 17

                  a.    Criteo's alleged advertising concerning its own click count numbers does not support a trade libel claim. ........ 17

                  b.    Criteo's alleged statements to SteelHouse customers also do not support a trade libel claim.............................. 18

                  c.    SteelHouse's trade libel claims also fail because SteelHouse failed to allege special damages.................... 20

            7.    The Court Should Dismiss The ACC With Prejudice ................ 21

      B.    SteelHouse's Affirmative Defenses Should Be Stricken....................... 21

IV.   CONCLUSION ........................................................................ 25

Criteo S.A.'s Motion To Dismiss Amended Counterclaims And Strike Affirmative Defenses

# **TABLE OF AUTHORITIES**

**CASES**                                                                    **PAGES**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................2, 5, 6

*Azco Biotech Inc. v. Qiagen, N.V.*,
    No. 12-CV-2599 BEN (DHB),
    2013 WL 4500782 (S.D. Cal. Aug. 20, 2013) ................................ 19

*Beachbody, LLC v. Universal Nutrients, LLC*,
    No. CV 16-02015-R,
    2016 WL 3912014 (C.D. Cal. July 18, 2016) ...................................7

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................5, 12

*In re Centerstone Diamonds, Inc.*,
    Nos. 2:09-bk-23945-PC, 2:13-ap-02040-PC,
    2014 WL 1330186 (Bankr. C.D. Cal. Apr. 2, 2014) ....................... 16

*Code Rebel, LLC v. Aqua Connect, Inc.*,
    No. CV 13-4539 RSWL (MANx),
    2013 WL 5405706 (C.D. Cal. Sept. 24, 2013)................................. 20

*Couveau v. American Airlines, Inc.*,
    218 F.3d 1078 (9th Cir. 2000) ...................................................3, 24

*CTF Development, Inc. v. Penta Hospitality, LLC*,
    No. C 09-02429 WHA,
    2009 WL 3517617 (N.D. Cal. Oct. 26, 2009) ................................. 22

*Davidson v. Kimberly-Clark Corp.*,
    76 F. Supp. 3d 964 (N.D. Cal. 2014)...........................................7, 10

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*,
    11 Cal. 4th 376 (1995) ..............................................................3, 16

*Delphix Corp. v. Actifo, Inc.*,
    No. C 13-4613 RS, 2014 WL 4628490 (N.D. Cal. Mar. 19, 2014) ..................7

*Desert European Motorcars, Ltd. v. Desert European Motorcars, Inc.*,
    No. EDCV 11-197 RSWL (DTBx),
    2011 WL 3809933 (C.D. Cal. Aug. 25, 2011) ................................. 23

*Dodson v. CSK Auto, Inc.*,
    No. 2:13-cv-00346-GEB-AC,
    2013 WL 3942002 (E.D. Cal. July 30, 2013) ................................. 22

*Durell v. Sharp Healthcare*,
    183 Cal. App. 4th 1350 (2010)....................................................... 14

*E & J Gallo Winery v. Grenade Beverage, LLC*,
   No. 1:13–cv–00770–AWI–SAB,
   2014 WL 1747688 (E.D. Cal. Apr. 30, 2014) ...................................................23

*First Advantage Background Services Corp. v. Private Eyes, Inc.*,
   569 F. Supp. 2d 929 (N.D. Cal. 2008) ...................................................3, 17, 19

*Foster v. Metropolitan Life Insurance Co.*,
   243 F. App'x. 208 (9th Cir. 2007)......................................................................24

*G & G Closed Circuit Events, LLC v. Nguyen*,
   No. 10-CV-00168-LHK,
   2010 WL 3749284 (N.D. Cal. Sept. 23, 2010)...................................................22

*In re Gilead Sciences Securities Litigation*,
   536 F.3d 1049 (9th Cir. 2008)............................................................................12

*Gonzalez v. Preferred Freezer Services, LBF, LLC*,
   No. CV 12-3467 ODW (FMO),
   2012 WL 2602882 (C.D. Cal. July 5, 2012) ......................................................23

*Gospel Missions of American v. City of L.A.*,
   328 F.3d 548 (9th Cir. 2003) ................................................................................1

*Grodzitsky v. American Honda Motor Co.*,
   No. 2:12-cv-1142-SVW-PLA,
   2013 WL 2631326 n.4 (C.D. Cal. June 12, 2013)..............................................13

*Guess, Inc. v. Superior Court*,
   176 Cal. App. 3d 473 (1986) ..............................................................................17

*Guttman v. La Tapatia Tortilleria, Inc.*,
   No. 15-cv-02042-SI,
   2015 WL 7283024 (N.D. Cal. Nov. 18, 2015)......................................11, 12, 14

*Harrison Ventures, LLC v. Alta Mira Treatment Center, LLC*,
   No. C 10-00188 RS,
   2010 WL 1929566 (N.D. Cal. May 12, 2010) ...................................................15

*Heartland Payment Systems, Inc. v. Mercury Payment Systems LLC*,
   No. CV C 14-0437 CW,
   2014 WL 5812294 (N.D. Cal. Nov. 7, 2014)...............................................13, 16

*Hernandez v. Select Portfolio, Inc.*,
   No. CV 15-01896 MMM (AJWx),
   2015 WL 3914741 (C.D. Cal. June 25, 2015).....................................................11

*Homeland Housewares, LLC v. Euro-Pro Operating, LLC*,
   No. CV 14-03954 DDP (MANx),
   2015 WL 476287 (C.D. Cal. Feb. 5, 2015) ..........................................................7

*I.B. ex rel. Fife v. Facebook, Inc.*,
   905 F. Supp. 2d 989 (N.D. Cal. 2012) ...............................................................14

Criteo S.A.'s Motion To Dismiss Amended Counterclaims And Strike Affirmative Defenses

*Implant Direct Sybron International v. Zest IP Holdings, LLC,*
    No. 11-CV-2247-LAB-WVG,
    2012 WL 1969292 (S.D. Cal. June 1, 2012) ..................................................... 18

*Ingels v. Westwood One Broadcasting Services, Inc.,*
    129 Cal. App. 4th 1050 (2005)......................................................................... 13

*J & J Sports Productions, Inc. v. Jimenez,*
    No. 10cv0866 DMS (RBB),
    2010 WL 5173717 (S.D. Cal. Dec. 15, 2010) ....................................... 4, 22, 23

*Jackson v. City of Inglewood,*
    No. CV 07-05311 (TJH (AJW),
    2009 WL 699948 (C.D. Cal. Mar. 12, 2009) ...................................................... 1

*Jarrow Formulas, Inc. v. LaMarche,*
    31 Cal. 4th 728 (2003) ..................................................................................... 20

*Joseph v. Kaye,*
    No. CV 16-01245 SJO (GJSx),
    2016 WL 3677142 (C.D. Cal. July 7, 2016) ..................................................... 13

*Kane v. Bosco,*
    No. 10-CV-01787-PHX-JAT,
    2010 WL 4879177 (D. Ariz. Nov. 23, 2010) ...................................................... 8

*Karl Storz Endoscopy-America, Inc. v. Surgical Technologies, Inc.,*
    285 F.3d 848 (9th Cir. 2002) ........................................................................... 25

*Kendall v. Visa U.S.A., Inc.,*
    518 F.3d 1042 (9th Cir. 2008) ......................................................................... 21

*Korea Supply Co. v. Lockheed Martin, Co.,*
    29 Cal. 4th 1134 (Cal. 2003) ........................................................................... 16

*Mallen v. Alphatec Holdings, Inc.,*
    861 F. Supp. 2d 1111 (S.D. Cal. 2012),
    *aff'd sub. nom. Fresno County Employees' Retirement Association*
    *v. Alphatec Holdings, Inc.,* 607 F. App'x 694 (9th Cir. 2015).......................... 9

*Mangindin v. Washington Mutual Bank,*
    637 F. Supp. 2d 700 (N.D. Cal. 2009) ............................................................. 10

*Mario v. Primuth,*
    No. 82-0456-E,
    1982 WL 1378 (S.D. Cal. Sept. 1, 1982) ........................................................... 8

*McGraw Co. v. Aegis General Insurance Agency, Inc.,*
    No. 16-cv-00274-LB,
    2016 WL 3745063 (N.D. Cal. July 13, 2016) .................................................... 6

*Melaleuca, Inc. v. Clark,*
    66 Cal. App. 4th 1344 (1998)..................................................................... 3, 18

*Microtec Research, Inc. v. Nationwide Mutual Insurance Co.*,
40 F.3d 968 (9th Cir. 1994) ............................................................3, 17, 18

*Moenig v. Bank of America, N.A.*,
No. 2:14-cv-01399-KJM-EFB,
2015 WL 2185245 (E.D.Cal. May 8, 2015)............................................12

*Moss v. U.S. Secret Service*,
572 F.3d 962 (9th Cir. 2009) ....................................................................5

*Naylor v. Flavan*,
No. CV 08-03746 GAF (AJW),
2009 WL 1468708 (C.D. Cal. May 19, 2009)...........................................1

*Neubronner v. Milken*,
6 F.3d 666 (9th Cir. 1993) .........................................................................8

*New Show Studios LLC v. Needle*,
No. 2:14-cv-01250-CAS(MRWx),
2014 WL 2988271 (C.D. Cal. June 30, 2014)..........................................11

*New.Net, Inc. v. Lavasoft*,
356 F. Supp. 2d 1090 (C.D. Cal. 2004)...................................................20

*Oak Grove Investors v. Travelers Insurance Co.*,
No. C 92-3326 BAC,
1993 WL 137302 (N.D. Cal. Apr. 28, 1993) .............................................8

*O'Connor v.Uber Technologies, Inc.*,
58 F. Supp. 3d 989 (N.D. Cal. 2014)......................................................13

*Openwave Messaging, Inc. v. Open-Xchange, Inc.*,
No. 16-cv-00253-WHP,
2016 WL 2621872 n.7 (N.D. Cal. May 9, 2016) .......................................6

*Pacific Gas & Electric Co. v. Bear Stearns & Co.*,
50 Cal. 3d 1118 (1990)........................................................................14, 15

*Piping Rock Partners, Inc. v. David Lerner Associates, Inc.*,
946 F. Supp. 2d 957 (N.D. Cal. 2013) ..............................................3, 17, 19

*Rael v. Dooney & Bourke, Inc.*,
No. 16cv0371 JM (DHB),
2016 WL 3952219 (S.D. Cal. July 22, 2016)...................................7, 9, 10

*Republic Molding Corp. v. B.W. Photo Utilities*,
319 F.2d 347 (9th Cir. 1963) ...................................................................24

*Robinson v. HSBC Bank USA*,
732 F. Supp. 2d 976 (N.D. Cal. 2010) .....................................................17

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2008), aff'd 355 F.3d 164 (2d Cir.) ........................2

Criteo S.A.'s Motion To Dismiss Amended Counterclaims And Strike Affirmative Defenses

*Rosenthal v. Irell & Manella*,
    135 Cal. App. 3d 121 (1982) ................................................................. 20

*SB Diversified Products, Inc. v. Murchison*,
    No. 12cv2328 JAH (MDD),
    2014 WL 3894353 (S.D. Cal. July 28, 2014) ...................................... 20

*Security People v. Classic Woodworking, LLC*,
    No. C-04-3133 MMC,
    2005 WL 645592 (N.D. Cal. Mar. 4, 2005) ........................................ 23

*Segura v. Felker*,
    No.CIV S-08-2137-SPG (PC),
    2010 WL 1689160 (E.D. Cal. Apr. 26, 2010) ...................................... 21

*Solis v. Couturier*,
    No. 2:08-cv-02732-RRB-GGH,
    2009 WL 2022343 (E.D. Cal. July 8, 2009) ....................................... 24

*Somers v. Apple, Inc.*,
    729 F.3d 953 (9th Cir. 2013) ................................................................. 6

*Spann v. J.C. Penney Corp.*,
    No. SA CV 12-0215 FMO (RNBx),
    2015 WL 11072165 (C.D. Cal. July 6, 2015) ...................................... 22

*State of California ex rel. State Lands Commission v. United States*,
    512 F. Supp. 36 (N.D. Cal. 1981) ......................................................... 21

*Tobacco II Cases*,
    46 Cal. 4th 298 (2009) .......................................................................... 14

*TransFresh Corp.v. Ganzerla & Associates, Inc.*,
    862 F. Supp. 2d 1009 (N.D. 2012) ......................................................... 6

*UMG Recordings, Inc. v. Global Eagle Entertainment, Inc.*,
    117 F. Supp. 3d 1092 (C.D. Cal. 2015) ......................................... passim

*United National Maintenance, Inc. v. San Diego Convention Centre, Inc.*,
    766 F.3d 1002 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 980 (2015) ............... 15

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ................................................................ 6

*Vogel v. Huntington Oaks Delaware Partners, LLC*,
    291 F.R.D. 438 (C.D. Cal. 2013) ........................................................... 3

*Vogel v. OM ABS, Inc.*,
    No. CV 13-01797 RSWL (JEMx),
    2014 WL 340662 (C.D. Cal. Jan. 30, 2014) ....................................... 22

*W. Sugar Co-op. v. Archer-Daniels-Midland Co.*,
    No. CV 11-3473 CBM (MANx),
    2012 WL 3101659 (C.D. Cal. July 31, 2012) ...................................... 8

Criteo S.A.'s Motion To Dismiss Amended Counterclaims And Strike Affirmative Defenses

*Warner v. Tinder Inc.*,
  105 F. Supp. 3d 1083 (C.D. Cal. 2015)........................................2, 11

*Watson v. Bank of America, N.A.*,
  No. 16cv513-GPC(MDD),
  2016 WL 3552061 (S.D. Cal. June 30, 2016) ...............................13

*Wofford v. Apple Inc.*,
  No. 11-CV-0034 AJB NLS,
  2011 WL 5445054 (S.D. Cal. Nov. 9, 2011) .................................6

*Xilinx, Inc. v. Altera Corp.*,
  No. C 93-20709-RMW (EAI),
  1994 WL 782236 (N.D. Cal. Feb. 8, 1994)...................................25

*Yagman v. Galipo*,
  No. CV 12-7908-GW(SHx),
  2013 WL 1287409 (C.D. Cal. Mar. 25, 2013) ...........................3, 16

*Zatkin v. Primuth*,
  551 F. Supp. 39 (S.D. Cal. 1982) .................................................1

*Zef Scientific, Inc. v. Shimadzu Scientific Instruments, Inc.*,
  No. 14CV1758 JAH (RBB),
  2016 WL 1255787 (S.D. Cal. Mar. 31, 2016)...............................17

**RULES**

Fed. R. Civ. P. 8(a) ...............................................................................5

Fed. R. Civ. P. 9(b) ....................................................................passim

Fed. R. Civ. P. 12(b) .............................................................................5

Fed. R. Civ. P. 12(f).............................................................................21

## I.    INTRODUCTION

Criteo sued SteelHouse to put an end to a counterfeit click fraud scheme perpetrated by SteelHouse to steal credit for online sales attributable to Criteo and other participants in the performance-based online marketing industry.  (Dkt. 1.)

On July 26, 2016, to divert attention from its own misconduct, SteelHouse filed baseless and fundamentally flawed counterclaims against Criteo.  (Dkt. 21.)

On August 15, 2016, Criteo moved to dismiss SteelHouse's Counter-Complaint.  (Dkt. 23.)  SteelHouse did not oppose Criteo's motion to dismiss. Instead, effectively conceding that its counterclaims were fatally flawed, SteelHouse elected to file amended counterclaims (the "ACC").  (Dkt. 36.)

SteelHouse's ACC contains the same baseless counterclaims that SteelHouse knows to be false and that should be dismissed for multiple reasons.

*First*, SteelHouse's counterclaims are based, in whole or in part, on the conclusory allegations that Criteo "generates fake clicks" or is "counterfeiting clicks" to inflate its click count numbers.  SteelHouse's ACC fails, however, to allege facts that support these false allegations.  Instead, SteelHouse alleges "[o]n information and belief, Criteo's click rate is fraudulent . . . as a result of adware, click bots . . ., or code" injected or created by either Criteo or unidentified "affiliates."  (ACC ¶ 22.) "Allegations of fraud based on information and belief usually do not satisfy the degree of particularity required under Rule 9(b)."  *Zatkin v. Primuth*, 551 F. Supp. 39, 42 (S.D. Cal. 1982).  This is particularly true in this case because SteelHouse's own CEO affirms his own belief that adware and bots are a ubiquitous part of the internet.[1]

---

[1]      In opposing Criteo's Motion for Preliminary Injunction, SteelHouse's CEO Mark Douglas acknowledged that all participants in the online ad industry suffer from third-party adware and bot traffic.  (7/25/16 Decl. of Mark Douglas (Dkt. 19-1) ("Douglas Decl.") ¶ 28.)  Courts can "consider a statement made in briefs to be a judicial admission."  *Gospel Missions of Am. v. City of L.A.*, 328 F.3d 548, 557 (9th Cir. 2003).  This includes declarations filed by a party in the same matter, and, thus, courts consider previously filed declaration statements by the plaintiff as binding on the plaintiff at the pleading stage.  *See Jackson v. City of Inglewood*, 2009 WL 699948, at *2, *6 n. 4-5 (C.D. Cal. Mar. 12, 2009) (statements in plaintiff's declaration in support of opposition to motion to dismiss previous complaint constitute judicial admissions and can be considered in motion to dismiss subsequent complaint); *see also Naylor v. Flavan*, 2009 WL 1468708, at *5 (C.D. Cal. May 19,

1    Thus, the absence of factual allegations supporting SteelHouse's speculation that

2    Criteo uses adware and bots is fatal to SteelHouse's claims.

3         *Second*, SteelHouse speculates that Criteo must be engaged in fraud because:

4    (1) SteelHouse cannot determine from the data available to it the source of every click

5    attributed to Criteo; (2) an allegedly large percentage of clicks attributed to Criteo

6    occurred after a user made a purchase on an e-tailer's website; and (3) multiple clicks

7    attributed to Criteo occur within short periods of time.  Such speculation does not

8    come close to satisfying the pleading requirements of either Rule 8 or 9(b) of the

9    Federal Rules of Civil Procedure.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

10   (pleading under Rule 8 "demands more than an unadorned, the-defendant-unlawfully-

11   harmed-me accusation" and rejects "'naked assertion[s]' devoid of 'further factual

12   enhancement'") (citation omitted); *Rombach v. Chang*, 355 F.3d 164, 175 (2d Cir.

13   2004) (explaining that to satisfy Rule 9(b) "plaintiffs cannot rest on their say-so that

14   these statements are fraudulent; they must explain why").

15        *Third*, SteelHouse's § 17500 and UCL claims fail because SteelHouse's

16   reliance, causation and damages allegations are fundamentally inconsistent and

17   inherently implausible.  SteelHouse's allegation that Criteo's allegedly inflated click

18   count numbers detrimentally caused SteelHouse to develop a non-click based business

19   model is simply incompatible with the position SteelHouse has taken throughout this

20   litigation:  that its "innovative" business model is the secret to its alleged success and

21   the reason why Criteo engaged in its alleged click count fraud, not the other way

22   around.  *See Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1098 (C.D. Cal. 2015).

23        *Fourth*, SteelHouse's contract interference claim fails because SteelHouse does

24   not allege:  (i) the "nature and extent" of the supposed contracts that Criteo allegedly

25   interfered with, *UMG Recordings, Inc. v. Global Eagle Entertainment, Inc.*, 117 F.

26   Supp. 3d 1092, 1115 (C.D. Cal. 2015); or (ii) that Criteo's conduct actually induced a

27

28   2009) (considering plaintiff's declaration in related case as judicial admission for
     purposes of evaluating defendant's motion to dismiss).

Criteo S.A.'s Motion To Dismiss Amended Counterclaims And Strike Affirmative Defenses

1   breach of any existing contractual obligations owed to SteelHouse, *Yagman v. Galipo*,
2   2013 WL 1287409, at *5 (C.D. Cal. Mar. 25, 2013).

3          ***Fifth***, SteelHouse's intentional interference with prospective economic
4   advantage claim fails because SteelHouse does not adequately allege that Criteo
5   engaged in independently wrongful and actionable conduct that interfered with
6   SteelHouse's alleged business relationships.  *Della Penna v. Toyota Motor Sales,*
7   *U.S.A., Inc.*, 11 Cal. 4th 376, 392-93 (1995).

8          ***Sixth,*** SteelHouse fails to adequately allege either theory of trade libel asserted
9   in its ACC.  As to its false advertising-based trade libel claim, SteelHouse does not
10  adequately allege that the Criteo advertisements underlying SteelHouse's claim are
11  false or actually ***disparage*** SteelHouse's products.  *See Microtec Research, Inc. v.*
12  *Nationwide Mut. Ins. Co.*, 40 F.3d 968, 972-73 (9th Cir. 1994).

13         As to its trade libel claim based on Criteo allegedly making false and
14  disparaging statements to SteelHouse's clients about SteelHouse's misconduct,
15  SteelHouse does not adequately allege that:  (1) Criteo's statements were false, *id.*;
16  (2) Criteo knew or should have known its alleged statements about SteelHouse's
17  misconduct were false, *Melaleuca, Inc. v. Clark*, 66 Cal. App. 4th 1344, 1350 (1998);
18  (3) SteelHouse actually lost customers or suffered any other damages as a result of the
19  alleged statements, *Piping Rock Partners, Inc. v. David Lerner Associates, Inc.,* 946
20  F. Supp. 2d 957, 981 (N.D. Cal. 2013), *aff'd*, 609 F. App'x 497 (9th Cir. 2015); or (4)
21  what was said, who said it, when it was said, or who it was said to, *First Advantage*
22  *Background Services Corp. v. Private Eyes, Inc.*, 569 F. Supp. 2d 929, 938 (N.D. Cal.
23  2008).  In addition, both theories of trade libel fail because SteelHouse does not allege
24  special damages with the required specificity.  *Id.*

25         ***Finally***, SteelHouse's affirmative defenses fail because:  (1) eight are not even
26  affirmative defenses; (2) SteelHouse did not allege *any* facts to support two of them;
27  and (3) the facts alleged are insufficient to support the remaining two.  *See Couveau v.*
28  *Am. Airlines, Inc.*, 218 F.3d 1078, 1083 (9th Cir. 2000); *Vogel v. Huntington Oaks*

1  *Delaware Partners, LLC*, 291 F.R.D. 438, 441 (C.D. Cal. 2013); *J & J Sports Prods.,*
2  *Inc. v. Jimenez*, 2010 WL 5173717, at *2 (S.D. Cal. Dec. 15, 2010).

3       For these reasons and those discussed below, SteelHouse's counterclaims
4  should be dismissed and its affirmative defenses should be stricken with prejudice.

## II.   BACKGROUND

6       Criteo was founded in 2005 by a small group of innovators at a start-up
7  incubator in Paris.  In just over ten years, it has become the global leader in digital
8  performance advertising:  Criteo has nearly 12,000 clients, delivers personalized ads
9  to over 130 countries, served 710 billion ads in 2015, has 1.2 billion unique internet
10 users per month, and in the past 12 months has generated roughly $22 billion in post-
11 click sales for its clients.

12      Criteo drives sales for e-commerce businesses by intelligently converting
13 shoppers into purchasers with dynamic personalized ads.  This is achieved by:
14 (1) accurately recommending the best offer from an entire product catalog;
15 (2) precisely predicting purchase intent; and (3) optimizing campaign performance by
16 dynamically selecting the creative components that will drive the most user interaction
17 with ads.  The Criteo Engine that enables this performance analyzes data from over
18 1.1 billion users each month, continuously sharpening its prediction, recommendation,
19 and bidding algorithms to maximize advertising campaign results.

20      Ignoring Criteo's tech superiority, creativity, and data-rich customer insights,
21 SteelHouse conclusorily alleges that Criteo's superior performance is simply too good
22 to be true and, therefore, must result from Criteo using bots and adware to
23 fraudulently inflate its click-count numbers.  (ACC ¶¶ 4-5.)  Specifically, SteelHouse
24 speculates that Criteo must be engaged in fraud because:  (1) SteelHouse cannot
25 determine from the data available to it the source of every click attributed to Criteo;
26 (2) an allegedly large percentage of clicks attributed to Criteo occurred after a user
27 made a purchase on an e-tailer's website; and (3) multiple clicks attributed to Criteo
28 occur within short periods of time.  (*Id.* ¶¶ 22-44.)  SteelHouse alleges no facts,

1   however, showing that Criteo actually uses bots and adware to inflate its click-count.

2        In support of its intentional interference and trade libel claims, SteelHouse also

3   alleges that Criteo "intentionally made false and misleading statements" accusing

4   SteelHouse of misconduct.  (*Id.* ¶¶ 97, 105, 110.)  Specifically, SteelHouse alleges

5   that Criteo employees made references to SteelHouse's "inflated . . . performance

6   levels," "artificially positive performance results," and "inflated click and post-click

7   volumes."  (*Id.* ¶¶ 58-62.)  These references cannot sustain either intentional

8   interference or trade libel claims because SteelHouse has acknowledged in this case

9   that its click-count numbers were inflated.  (*Id.* ¶ 56.)[2]

10       SteelHouse also alleges that Criteo falsely "accused SteelHouse of fraud and

11  deceptive business practices."  (*Id.* ¶ 62.)  SteelHouse's ACC fails, however, to allege

12  necessary facts, such as who made those statements, to whom they were made, when

13  they were made, or even what was said.

14  **III.   ARGUMENT**

15       **A.   All Six Of SteelHouse's Counterclaims Should Be Dismissed**

16       A complaint cannot survive a Rule 12(b)(6) motion to dismiss if it does not

17  contain factual allegations sufficient to "state a claim to relief that is plausible on its

18  face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "[A] plaintiff's

19  obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than

20  labels and conclusions, and a formulaic recitation of the elements of a cause of action

21  will not do."  *Id.* at 555 (quoting Fed. R. Civ. P. 8(a)).  Rule 8 "demands more than an

22  unadorned, the-defendant-unlawfully-harmed-me accusation" and rejects "'naked

23  assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678

24  (citation omitted).  Rather, "for a complaint to survive a motion to dismiss, the non-

25  conclusory 'factual content,' and reasonable inferences from that content, must be

26  plausibly suggestive of a claim entitling the plaintiff to relief." (citation omitted)

27  _____
[2]      SteelHouse's CEO has admitted both that its click-count numbers were inflated
28  and that it engaged in the conduct alleged in Criteo's complaint.  (Douglas Decl.
¶¶ 49-51.)

1  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal*, 556 U.S. at

2  678 ("Where a complaint pleads facts that are merely consistent with a defendant's

3  liability, it stops short of the line between possibility and plausibility of entitlement to

4  relief.")); *Somers v. Apple, Inc.*, 729 F.3d 953, 960 (9th Cir. 2013) (factual allegations

5  "must rise above the mere conceivability or possibility of unlawful conduct that

6  entitles the pleader to relief").

7       Furthermore, counterclaims that sound in fraud are subject to "the heightened

8  pleading requirements of Rule 9(b)." *TransFresh Corp. v. Ganzerla & Assocs. Inc.*,

9  862 F. Supp. 2d 1009, 1018 (N.D. Cal. 2012); *Vess v. Ciba-Geigy Corp. USA*, 317

10  F.3d 1097, 1102-05 (9th Cir. 2003) (holding that Rule 9(b) applies to §17500 and

11  UCL claims when a "unified course of fraudulent conduct" provides the basis for the

12  claims); *Openwave Messaging, Inc. v. Open-Xchange, Inc.*, 2016 WL 2621872, at *5

13  n.7 (N.D. Cal. May 9, 2016) (applying Rule 9(b) to Lanham Act false advertising

14  claim); *UMG Recordings, Inc.*, 117 F. Supp. 3d at 1117 (applying Rule 9(b) to

15  intentional interference with prospective economic advantage claim when act involves

16  fraud and misrepresentation); *Wofford v. Apple Inc.*, 2011 WL 5445054, at *3 (S.D.

17  Cal. Nov. 9, 2011) (applying Rule 9(b) to intentional interference with contract

18  claim); *McGraw Co. v. Aegis Gen. Ins. Agency, Inc.*, 2016 WL 3745063, at *3 (N.D.

19  Cal. July 13, 2016) (applying 9(b) to trade libel claim sounding in fraud).

20       "To satisfy Rule 9(b), the plaintiff must include the who, what, when, where,

21  and how of the fraud." *TransFresh*, 862 F. Supp. 2d at 1017 (citation omitted). "The

22  plaintiff must set forth what is false or misleading about a statement, and why it is

23  false." *Id.* (citation omitted). "[O]n a motion to dismiss, if particular averments of

24  fraud are insufficiently pled under Rule 9(b), a district court should disregard those

25  averments, or strip them from the claim . . . [and] then examine the allegations that

26  remain to determine whether they state a claim." *Id.* (second alteration in original)

27  (citations omitted).

28       Here, all six of SteelHouse's counterclaims are premised on the allegation that

Criteo S.A.'s Motion To Dismiss Amended Counterclaims And Strike Affirmative Defenses

1  Criteo fraudulently inflated and promoted its click count numbers in order to "deceive

2  and defraud SteelHouse and e-tailers."  (ACC ¶¶ 68-69, 77-79, 87-89, 95, 105, 108-

3  19.)  In addition, three of SteelHouse's six counterclaims are also premised on the

4  allegation that Criteo "intentionally made false and misleading statements about

5  SteelHouse's attribution method to SteelHouse's e-tail clients." (*Id.* ¶¶ 97, 105, 110.)

6  SteelHouse was required to satisfy the heightened pleading requirements of Rule 9(b).

7  1.   <u>SteelHouse Failed To State A Lanham Act Claim</u>

8          To state a Lanham Act false advertising claim, SteelHouse was required to

9  plead that Criteo made a false statement of fact in a commercial advertisement about

10  its own or another's product.  *See Beachbody, LLC v. Universal Nutrients, LLC*, 2016

11  WL 3912014, at *3 (C.D. Cal. July 18, 2016).  Specifically, SteelHouse was required

12  to allege that Criteo made statements that either:  (1) were literally false; or (2) misled,

13  confused, or deceived the public.  *See Homeland Housewares, LLC v. Euro-Pro*

14  *Operating, LLC*, 2015 WL 476287, at *3 (C.D. Cal. Feb. 5, 2015).  At the motion to

15  dismiss stage, "[i]t is not enough . . . to simply claim that [an advertisement] is false –

16  [the plaintiff] must allege facts showing *why* it is false." *Davidson v. Kimberly-Clark*

17  *Corp.*, 76 F. Supp. 3d 964, 974 (N.D. Cal. 2014) (emphasis in original); *Rael v.*

18  *Dooney & Bourke, Inc.*, 2016 WL 3952219, at *3 (S.D. Cal. July 22, 2016)

19  (dismissing false advertising claims based on misleading prices where plaintiff relies

20  on "say-so and conclusory allegations instead of facts").

21          Here, SteelHouse fails to adequately allege facts showing that Criteo made any

22  false statement.  Instead, SteelHouse alleges "*[on] information and belief*, Criteo's

23  click rate is fraudulent . . . as a result of adware, click bots . . ., or code created by

24  Criteo or its affiliates to manufacture fake clicks and mask the source of these clicks"

25  (ACC ¶ 22 (emphasis added)), and, therefore, Criteo's statements regarding its click-

26  count numbers are false.  (*Id.* ¶¶ 22, 27.)

27          Fraud allegations based on "information and belief" do not satisfy Rule 9(b).

28  *See, e.g.*, *Delphix Corp. v. Actifo, Inc.*, 2014 WL 4628490, at *2 (N.D. Cal. Mar. 19,

7

2014) (allegation upon "information and belief" "creates a further inference that plaintiff likely lacks knowledge of underlying facts to support the assertion, and is instead engaging in speculation to an undue degree"); *W. Sugar Co-op. v. Archer-Daniels-Midland Co.*, 2012 WL 3101659, at *4 (C.D. Cal. July 31, 2012) (allegations "upon information and belief" are not "sufficient to inform any [defendants] of their fraudulent conduct"); *Oak Grove Inv'rs v. Travelers Ins. Co.*, 1993 WL 137302, at *1 (N.D. Cal. Apr. 28, 1993) (dismissing fraud claims where allegations "based on information and belief and fail[] to attribute particular fraudulent statements or acts to particular individuals"); *Mario v. Primuth*, 1982 WL 1378, at *1 (S.D. Cal. Sept. 1, 1982) ("Allegations of fraud based on information and belief usually do not satisfy the degree of particularity required under Rule 9(b).").

This is particularly true here because SteelHouse does not allege facts as to: (1) who, when, where, or how Criteo used adware, bots or "code" – let alone what type of "code" was allegedly used; and (2) who Criteo's unidentified "affiliates" are, their relationship with Criteo, whether they are even controlled by Criteo, and when, where, or how they used adware, bots or code at Criteo's direction.

Accordingly, SteelHouse's claim should be dismissed as a matter of law.  *See Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (rejecting fraud allegations based upon information and belief where plaintiff "allege[s] no more than 'suspicious circumstances'; those circumstances . . . do not constitute a sufficient factual basis for allegations of insider trading"); *Kane v. Bosco*, 2010 WL 4879177, at *10 (D. Ariz. Nov. 23, 2010) ("Plaintiffs base their allegations of fraud on information and belief, and fail to attribute particular fraudulent statements or acts to specific defendants. Consequently, Plaintiffs' allegations of fraud are subject to dismissal.").

The ACC is not saved by its speculation that Criteo must be engaged in fraud because:  (1) SteelHouse cannot determine from the data available to it the source of every click attributed to Criteo; (2) an allegedly large percentage of clicks attributed to

1  Criteo occurred after a user made a purchase on an e-tailer's website; and (3) some

2  clicks attributed to Criteo occur within short periods of time.  (ACC ¶¶ 24-31.)

3  First, SteelHouse's inability to determine the source of a click from the data

4  available to it does not mean that the click is fake or counterfeit.  SteelHouse cannot

5  rely on its own "say-so and conclusory allegations instead of facts" to allege that

6  Criteo's click count numbers are false.  *Rael*, 2016 WL 3952219, at *3 (rejecting

7  allegation that reduced sales prices were misleading because the handbags were

8  substandard, holding "Plaintiff alleges no facts or legal authority to explain why

9  Defendant's assertion that all items sold at the outlet store are 'over-runs, discounted,

10 or irregular' conclusively establishes that these products are inherently 'substandard'

11 or inferior"); *Mallen v. Alphatec Holdings, Inc.*, 861 F. Supp. 2d 1111, 1130 (S.D. Cal.

12 2012) (mere allegation that there is "indication" that there "may have been" channel

13 stuffing insufficient to plead that sales results were in fact false or misleading), *aff'd*

14 *sub. nom. Fresno Cty. Emps.' Ret. Ass'n v. Alphatec Holdings, Inc.*, 607 F. App'x 694

15 (9th Cir. 2015).  While SteelHouse alleges that its inability to determine the source of

16 Criteo's clicks "***suggests***" that the "clicks are fake" or "not generated by actual human

17 users" (ACC ¶ 25 (emphasis added)), SteelHouse does not allege facts supporting this

18 inference, or showing how the lack of attributable source in the data available to

19 SteelHouse shows that Criteo generates fraudulent clicks.

20 Second, SteelHouse's own allegations explain why the fact that Criteo continues

21 to "generate[] clicks after consumers purchase a product" does not show such clicks

22 are fake.  (*Id.* ¶ 27.)  Specifically, SteelHouse alleges that, unlike other advertisers,

23 Criteo continues to serve ***actual*** advertisements to an internet user after he or she has

24 made a purchase.  (*Id.*)  That Criteo seeks to drive incremental sales by serving ads to

25 internet users after they have made a purchase does not make actual clicks by those

26 internet users – or the resulting additional incremental sales that follow – fake.

27 Indeed, in so alleging, SteelHouse ignores marketing studies and common sense that

28 indicate that displaying ads to internet shoppers who have demonstrated a propensity

9

1  to buy by already making a purchase is an effective means of driving incremental

2  sales.  SteelHouse's conclusory allegation that Criteo's click count statements are

3  falsely inflated because its click count numbers include actual clicks, on actual ads, by

4  actual internet users makes no sense and should be disregarded.  *See, e.g.*, *Davidson*,

5  76 F. Supp. 3d at 974-75 ("vague" references to defendant's alleged statements

6  "lacking in detail" "do not satisfy plaintiff's obligation to plead with specificity how

7  the . . . representation was false and caused the damage . . . [w]ithout those details,

8  plaintiff's [allegation] . . . is nothing more than an unwarranted conclusion").

9        Third, SteelHouse alleges Criteo's click numbers may be inflated because for 99

10  out of Criteo's over 12,000 clients, "44.9% of Criteo's apparent clicks are from users

11  clicking the same advertisement within a 30-minute period," which is allegedly

12  "thirteen times the industry standard."  (ACC ¶ 31.)  SteelHouse stops short of alleging

13  that these clicks are in fact fake, simply alleging that these clusters "***indicate[]***" these

14  clicks are not "authentic."  (*Id.* ¶ 32 (emphasis added).)  Moreover, SteelHouse alleges

15  no facts showing that these clicks are actually fake, much less that Criteo is the source

16  of such clicks.  In short, SteelHouse asks the Court to conclude based on its "say-so"

17  that such clicks mean that Criteo has committed fraud.  Such allegations are

18  insufficient and the claims should be dismissed.  *See Rael*, 2016 WL 3952219, at *3.

19              2.    SteelHouse Failed To State A § 17500 False Advertising Claim

20        Section 17500 prohibits a business from disseminating "any statement 'which is

21  untrue or misleading, and which is known, or which by the exercise of reasonable care

22  should be known, to be untrue or misleading.'"  *Mangindin v. Wash. Mut. Bank*, 637 F.

23  Supp. 2d 700, 709 (N.D. Cal. 2009) (citation omitted).  As with the Lanham Act, to

24  adequately plead falsity under § 17500, SteelHouse was required to plead facts

25  showing that either Criteo's statements:  (1) are literally false; or (2) misled, confused,

26  or deceived the public.  *Id.*

27        SteelHouse failed to do so.  Instead, it relies on the same deficient allegations

28  underlying its Lanham Act claim.  Thus, SteelHouse fails to allege falsity under

1  § 17500 for the same reasons it fails to do so under the Lanham Act.

2      In addition, "[t]o plead a claim for false advertising under [§ 17500], a plaintiff

3  must allege that a defendant publicly disseminated advertising that [is] false or

4  misleading, and which the defendant knew or reasonably should have known was

5  untrue or misleading." *New Show Studios LLC v. Needle*, 2014 WL 2988271, at *17

6  (C.D. Cal. June 30, 2014).  SteelHouse failed to do so.  SteelHouse does not allege

7  Criteo knew, or even should have known, that its click count numbers were inflated.

8  SteelHouse's failure to do so is consistent with its failure to allege facts showing that

9  Criteo inflated its click count numbers.

10     SteelHouse also failed to adequately allege that it "relied on [Criteo]'s

11 purported misrepresentation and suffered economic injury as a result." *Guttman v. La*

12 *Tapatia Tortilleria, Inc.*, 2015 WL 7283024, at *3, *5 (N.D. Cal. Nov. 18, 2015)

13 (granting motion to dismiss where plaintiff failed to allege actual reliance).  Indeed,

14 SteelHouse's allegation that it detrimentally relied on Criteo's statements is internally

15 inconsistent and implausible.

16     SteelHouse alleges it "relied on Criteo's statements about its click count rates in

17 making business decisions," including its selection of a non-click based business

18 model.  (ACC ¶ 88 ("[T]o combat the emphasis of clicks, SteelHouse has focused on

19 creating distinct products and services, including its new Creative Ad Suite.").

20 However, throughout this litigation, including in the ACC, SteelHouse has criticized

21 Criteo's click-based business model as "archaic," while championing itself as an

22 "innovative newcomer that has taken the Ad Tech industry by storm," with a creative

23 ad suite that is "unlike anything ever before offered in the industry."  (*Id.* ¶¶ 1-2.)

24     SteelHouse's allegation that it relied on Criteo's click-count statements when

25 selecting a business model cannot be reconciled with its allegations that Criteo's

26 supposed click-count scheme was implemented in response to SteelHouse's

27 "innovative" business model.  (*Id.* ¶ 3.)  Courts routinely reject "[c]ontradictory

28 allegations such as these [that] are inherently implausible, and fail to comply with

11

1    Rule 8, *Twombly*, and *Iqbal*."  *Hernandez v. Select Portfolio, Inc.*, 2015 WL 3914741,

2    at *10 (C.D. Cal. June 25, 2015); *Twombly*, 550 U.S. at 570 (in order to survive

3    motion to dismiss, plaintiff must state a "claim for relief that is plausible on its face");

4    *Warner*, 105 F. Supp. 3d at 1098 ("allegations are inherently contradictory, which

5    warrants dismissal"); *Moenig v. Bank of Am., N.A.*, 2015 WL 2185245, at *4 (E.D.

6    Cal. May 8, 2015) ("These contradictory factual allegations do not meet Rule 8").

7          Similarly, SteelHouse has not alleged, and cannot adequately allege, that its

8    purported reliance on Criteo's advertisements caused "economic injury as a result."

9    *Guttman*, 2015 WL 7283024, at *3.  In fact, SteelHouse proclaims the opposite, that

10   SteelHouse's "innovative" model—purportedly adopted in reliance on Criteo's false

11   advertisement—has "taken the Ad Tech industry by storm."  Elsewhere in this

12   litigation, SteelHouse has gone so far as to claim that it has experienced 150% growth

13   as a result of its "innovative" business model.  (Douglas Decl. ¶ 10.)  Accordingly,

14   SteelHouse's contradictory and implausible theory of reliance, causation, and damages

15   collapses on itself and warrants dismissal with prejudice.  *See, e.g.*, *In re Gilead Scis.

16   Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008) (plaintiffs must allege facts that

17   support a theory of causation that is facially plausible).

18                     3.    SteelHouse Failed To State A UCL Claim

19          The UCL prohibits unlawful, unfair, or fraudulent business acts or practices.

20   *Joseph v. Kaye*, 2016 WL 3677142, at *9 (C.D. Cal. July 7, 2016).

21          SteelHouse attempts to allege a UCL claim under the unlawful and fraudulent

22   act prongs.  (Dkt. 21 at 40 ¶¶ 54-59.)  The unlawful prong UCL claim fails, however,

23   because it has not adequately pled any of its other four counterclaims, as discussed

24   above and below.  The fraud prong UCL claim also fails because SteelHouse has not

25   adequately pled that Criteo engaged in fraudulent conduct.  *See Grodzitsky v. Am.

26   Honda Motor Co.*, 2013 WL 2631326, at *4 n.4 (C.D. Cal. June 12, 2013) (Wilson, J.)

27   (applying Rule 9(b) to UCL fraud prong claim).  SteelHouse's failure to plead actual

28   reliance on any alleged conduct by Criteo is also fatal to its UCL claim.

1      *a.   SteelHouse Failed To Allege Unlawful Conduct*

2          "A defendant cannot be liable under § 17200 for committing 'unlawful business

3      practices' without having violated another law. . . . If the [underlying] claim is

4      dismissed, then there is no 'unlawful' act upon which to base[] the derivative [UCL]

5      claim." *Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1060

6      (2005) (second alteration in original) (citation omitted); *Heartland Payment Sys., Inc.*

7      *v. Mercury Payment Sys., LLC*, 2014 WL 5812294, at *7 (N.D. Cal. Nov. 7, 2014)

8      (dismissing UCL claim under unlawful prong where court found underlying Lanham

9      Act and § 17500 claims insufficiently pled).  Here, SteelHouse's allegation of

10     unlawful conduct is premised on its other four counterclaims.  But, as discussed above

11     and below, SteelHouse has not adequately pled any of these claims.  As such, its

12     derivative unlawful prong UCL claim should be dismissed with prejudice.

13         *b.   SteelHouse Failed To Adequately Allege Fraud*

14         In order to plead a fraud-based UCL claim, SteelHouse must "set forth 'the

15     time, place, and specific content of the false representations as well as the identities of

16     the parties to the misrepresentation.'"  *Watson v. Bank of Am., N.A.*, 2016 WL

17     3552061, at *17 (S.D. Cal. June 30, 2016) (citation omitted).  Failure to "allege the

18     who, what, when, and where concerning the misrepresentations and/or fraudulent

19     conduct" is fatal to a fraud prong UCL claim.  *Id.*  Here, SteelHouse's fraud prong

20     UCL claim is based on its conclusory allegations that Criteo "generates fake clicks" or

21     is "counterfeiting clicks" to inflate its click count numbers.  However, as discussed

22     above, SteelHouse failed to plead facts, as opposed to conclusions, supporting these

23     conclusory allegations.  Thus, its fraud-based UCL claim should be dismissed.

24         *c.   SteelHouse's Reliance, Causation And Damages Allegations*
           *Are Implausible*
25

26         To establish standing to bring a fraud-based UCL claim, SteelHouse must

27     plead and prove its "*own* reliance – not the reliance of third parties." *O'Connor v.*

28     *Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1002 (N.D. Cal. 2014) (emphasis in original).

This standing requirement extends to "claims under the unlawful prong . . . that are based . . . on allegations of misrepresentation and deception." *Guttman*, 2015 WL 7283024, at *3; *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363-64 (2010) (affirming demurrer of a UCL claim under the unlawful prong when plaintiff failed to plead actual reliance).  Moreover, plaintiff "must show that he personally lost money or property because of his own actual and reasonable reliance on the allegedly untrue or misleading statements." *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009); *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1012 (N.D. Cal. 2012) ("Reliance is proved by showing that the [unlawful or fraudulent conduct] was an 'immediate cause' of the plaintiff's injury-producing conduct.") (citing *In re Tobacco II*).

As noted, SteelHouse alleges that it relied on Criteo's advertisements "in making business decisions," namely, not pursuing a click-count business model and instead "focus[ing] on creating distinct products and services."  (ACC ¶ 88.)  As shown above, SteelHouse's reliance, causation, and damages allegations are all inherently inconsistent and implausible and should be dismissed with prejudice.  (*See* Douglas Decl. ¶ 10 (claiming that SteelHouse has experienced 150% growth as a result of its "innovative" business model).)

4.    SteelHouse Failed To State A Contract Interference Claim

To state a claim for intentional interference with contractual relations, SteelHouse is required to plead facts showing:  "(1) a valid contract between [SteelHouse] and a third party; (2) [Criteo]'s knowledge of this contract; (3) [Criteo]'s intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pacific Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990).  SteelHouse failed to do so for several reasons.

a.    *SteelHouse Failed To Allege A Valid Contractual Relationship Existed Between Itself And A Third Party*

To adequately plead an intentional interference with contractual relations claim,

14

1   "counterclaimants must identify the third party or parties with whom they contracted,

2   and the nature and extent of their relationship with that party or parties." *UMG*

3   *Recordings, Inc.*, 117 F. Supp. 3d at 1115.  Failure to do so "requires dismissal of the

4   claim, because 'to understand whether [counterclaimants'] performance was disrupted

5   require[s] the district court to determine what contractual rights [they] possessed.'"

6   *Id*. (alterations in original) (quoting *United Nat'l Maint., Inc. v. San Diego Convention*

7   *Ctr., Inc.*, 766 F.3d 1002, 1009 (9th Cir. 2014)).

8        Here, SteelHouse merely alleges that Criteo's conduct caused SteelHouse to

9   "los[e] actual customers with whom it had contractual relationships including, but not

10   limited to Nike, VistaPrint, Bodybuilding.com, and TOMS."  (ACC ¶ 98.)  However,

11   while the ACC now specifically identifies some, but not all, of the clients Criteo

12   allegedly interfered with, SteelHouse still fails to provide any facts to demonstrate the

13   "nature and extent" of those supposed contracts.  *UMG Recordings, Inc.*, 117 F. Supp.

14   3d at 1115.  SteelHouse's intentional interference with contractual relations claim

15   should be dismissed with prejudice for this reason alone.  *Id.*; *In re Centerstone*

16   *Diamonds, Inc.*, 2014 WL 1330186, at *6 (Bankr. C.D. Cal. Apr. 2, 2014) (dismissing

17   intentional interference with contractual relations claim where the "Complaint states

18   only that 'there were valid contractual relationships'" but "does not allege facts

19   identifying a specific contract, the parties thereto, or the substance and date thereof").

20          *b.*     *SteelHouse Failed To Allege A Breach*

21        In an addition to pleading the "nature and extent" of the allegedly interfered

22   contracts, SteelHouse is also required to plead an actual breach or disruption of those

23   identified contracts in order to state a contract interference claim.  *See Pac. Gas &*

24   *Elec. Co.*, 50 Cal. 3d at 1126.

25        Here, SteelHouse vaguely alleges that it "lost" customers due to Criteo's

26   alleged conduct.  SteelHouse fails, however, to allege facts showing any contractual

27   relationship between SteelHouse and a third party was actually breached or disrupted.

28   *See, e.g.*, *Harrison Ventures, LLC v. Alta Mira Treatment Ctr., LLC*, 2010 WL

1929566, at *5 (N.D. Cal. May 12, 2010) ("When, as here, the complaint fails to allege an underlying breach, no claim for intentional interference can be stated."); *Heartland*, 2014 WL 5812294, at *8 (dismissing contract interference claim while plaintiff alleged and identified "merchants who have left [plaintiff] for [defendant]" but plaintiff "does not allege that any of its contracts with any former merchant have actually been breached, much less breached because of interference by [defendant]" (citation omitted)); *Yagman*, 2013 WL 1287409, at *5 (interference claim fails where the complaint "fails to set forth the terms of the agreement, explain exactly which terms were breached, or allege plausible facts indicating that [defendant's] actions were intentionally designed to cause that breach").

        5.   <u>SteelHouse Failed To Allege A Claim For Intentional Interference With Prospective Economic Advantage</u>

To state a claim for intentional interference with prospective economic advantage, SteelHouse was required to allege facts showing:  (1) an economic relationship between SteelHouse and some third party, with the probability of future economic benefit to the plaintiff; (2) Criteo's knowledge of the relationship; (3) intentional and wrongful conduct designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) proximately caused economic harm.  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (Cal. 2003).

Moreover, a "plaintiff seeking to recover for alleged interference with prospective economic relations has the burden of pleading and proving that the defendant's interference was wrongful 'by some measure beyond the fact of the interference itself.'"  *Della Penna*, 11 Cal. 4th at 392-93 (citation omitted).  The interfering conduct must be "independently actionable."  *Korea Supply Co.*, 29 Cal. 4th at 1158-59; *see also UMG Recordings, Inc.*, 117 F. Supp. 3d at 1117 ("Because counterclaimants have not adequately pled a separate cause of action . . . as the basis of independently wrongful conduct, they fail to allege a cause of action for" intentional interference (alterations in original omitted) (citation omitted)).

1   Here, SteelHouse relies on its false advertising and UCL claims to allege that
2   Criteo performed an independently wrongful act when allegedly interfering with
3   SteelHouse's business prospects.  However, as shown above, SteelHouse has failed to
4   adequately plead those claims.  *UMG Recordings, Inc.*, 117 F. Supp. 3d at 1116; *Zef*
5   *Sci., Inc. v. Shimadzu Sci. Instruments, Inc.*, 2016 WL 1255787, at *6 (S.D. Cal. Mar.
6   31, 2016) (dismissing tortious interference claim based on alleged antitrust violations
7   where plaintiff "did not factually allege an antitrust injury as required for its claims
8   under the Sherman Act, Cartwright Act, and UCL").  Thus, because SteelHouse has
9   not adequately alleged independently wrongful conduct, its interference with
10  prospective economic advantage claim should be dismissed.

11  6.   SteelHouse Failed To Allege A Trade Libel Claim

12  "Trade libel is an intentional disparagement of the quality of property which
13  results in pecuniary damage to plaintiff."  *Robinson v. HSBC Bank USA*, 732 F. Supp.
14  2d 976, 984-85 (N.D. Cal. 2010).  SteelHouse must allege:  (1) a false disparaging
15  statement about its product, *Microtec Research, Inc.*, 40 F.3d at 972-73; (2) that
16  "played a material and substantial part in inducing others not to deal with
17  [SteelHouse]," *Piping Rock Partners, Inc.*, 946 F. Supp. 2d at 981 (citation omitted);
18  (3) causing "special damages in the form of pecuniary loss," *First Advantage*, 569 F.
19  Supp. 2d at 938.  The ACC alleges Criteo committed trade libel in two ways, neither
20  of which is sufficient as a matter of law.

21  a.   *Criteo's alleged advertising concerning its own click count*
22       *numbers does not support a trade libel claim.*

23  SteelHouse alleges that Criteo's allegedly false advertisements promoting its
24  click count numbers constitute trade libel.  The allegations fail for several reasons.

25  First, as shown above, SteelHouse fails to adequately allege that Criteo's
26  statements concerning its click count numbers were in fact false.  This alone precludes
27  SteelHouse's trade libel claim.  *Guess, Inc. v. Superior Court*, 176 Cal. App. 3d 473,
28  479 (1986) ("[P]laintiff seeking damages for trade libel must . . . carry the burden of

17

1  proving that the disparaging statement is false[.]").

2      Second, while SteelHouse identifies statements by Criteo promoting its click

3  count rates (*see* ACC ¶¶ 18-22), not a single one of these statements even mentions

4  SteelHouse, let alone disparages its product.  SteelHouse simply does not explain how

5  Criteo's promotion of its *own* statistics constitutes a disparaging statement about a

6  competitor's product, let alone specifically SteelHouse's product.  *See Microtec*

7  *Research, Inc.*, 40 F.3d at 972-73.  The Court should dismiss the trade libel claims

8  premised on Criteo's own alleged advertisements about its own click count rate.

9                                b.    *Criteo's alleged statements to SteelHouse customers also do*

10                                        *not support a trade libel claim.*

11      SteelHouse identifies four statements in May 2016 allegedly made by Criteo

12  employees to unidentified SteelHouse customers concerning SteelHouse's inflated

13  click count numbers.  These allegations also fail to establish a trade libel cause of

14  action for several reasons.

15      First, as the ACC itself makes clear, each of the four specific statements made

16  by Criteo employees simply referenced SteelHouse's "inflated . . . performance

17  levels," "artificially positive performance results," and "inflated click and post-click

18  volumes."  (ACC ¶¶ 58-62.)  But, SteelHouse alleges no facts demonstrating why

19  these statements concerning its inflated click count numbers were, in fact, false.  *See*

20  *Implant Direct Sybron Int'l v. Zest IP Holdings, LLC*, 2012 WL 1969292, at *6 (S.D.

21  Cal. June 1, 2012) (dismissing trade libel claim where plaintiff does not allege why

22  statement was false).  Indeed, the ACC **concedes** that SteelHouse's click count

23  numbers were, in fact, inflated but contends the inflation was "inadvertent and not

24  intentional." (ACC ¶ 56.)  Thus, as a matter of law, SteelHouse's trade libel claim

25  fails because SteelHouse admits the truth of these statements.

26      Second, to establish a trade libel claim the claimant must allege and prove the

27  "publisher either knows the statement is false or has some serious subjective doubt

28  about the truth of the statement." *Melaleuca, Inc.*, 66 Cal. App. 4th at 1350.  Here,

1   while SteelHouse alleges in conclusory fashion that "Criteo knew or should have

2   known that its statements were false and/or misleading" (ACC ¶ 63), SteelHouse does

3   not allege a single fact demonstrating that Criteo knew or should have known that

4   SteelHouse's click count numbers were not in fact inflated—especially since

5   SteelHouse itself admits its own numbers were "inadvertent[ly]" inflated.  (*Id.* ¶ 56.)

6        Third, tellingly absent from SteelHouse's allegations concerning the four

7   statements made by Criteo employees is any factual allegation that the unidentified

8   SteelHouse customers on the receiving end of those alleged statements actually left

9   SteelHouse or otherwise reduced their business with SteelHouse as a result of those

10  statements.  Indeed, the ACC does not even allege if or how those specific

11  unidentified customers reacted to the alleged statements at all.  Thus, SteelHouse

12  cannot "also prove that the statement played a material and substantial part in

13  inducing others not to deal with [SteelHouse]" *Piping Rock Partners, Inc.*, 946 F.

14  Supp. 2d at 981 (internal quotation omitted), when SteelHouse does not even allege

15  that those specific customers did in fact stop dealing with SteelHouse.

16       Finally, the ACC nakedly asserts that Criteo has "accuse[d] SteelHouse of fraud

17  and deceptive business practices."  (ACC ¶ 62.)  SteelHouse fails to allege who made

18  these statements, to whom they were made, when they were made, or what was even

19  said.  "Without this information, the claim is deficient.  This alone is sufficient basis

20  to grant the motion."  *First Advantage*, 569 F. Supp. 2d at 937 (dismissing alleged

21  trade libel where "[n]othing in the First Amended Counterclaim gives any indication

22  of who from [counter defendant] made those statements, when they made the

23  statements, or what exactly they said.  Without this information, the claim is deficient.

24  This alone is sufficient basis to grant the motion [to dismiss]"); *Azco Biotech Inc. v.*

25  *Qiagen, N.V.*, 2013 WL 4500782, at *13 (S.D. Cal. Aug. 20, 2013) (rejecting general

26  trade libel allegation that defendants "published 'various defamatory statements' to

27  'numerous individuals and entities in the biotech and life sciences industry'" where

28  complaint does not allege "the particulars, i.e. the time and place of the alleged

1  publications, the identities of the speakers, and specific recipients").[3]

2           *c.    SteelHouse's trade libel claims also fail because SteelHouse*

3               *failed to allege special damages.*

4        As to both of SteelHouse's apparent allegations of trade libel, it is axiomatic

5  that a "bare allegation of the amount of pecuniary loss is insufficient for the pleading

6  of a trade libel claim." *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1113 (C.D.

7  Cal. 2004) (citation omitted).  Thus, a plaintiff must plead special damages with

8  specificity and "could not satisfy the special damages requirement for trade libel by

9  simply referring to an amount to be ascertained at trial rather than specifying the

10  amount of damage." *Code Rebel, LLC v. Aqua Connect, Inc.*, 2013 WL 5405706, at

11  *5 (C.D. Cal. Sept. 24, 2013); *SB Diversified Prods., Inc. v. Murchison*, 2014 WL

12  3894353, at *9 (S.D. Cal. July 28, 2014) (collecting cases holding same).

13  Specifically, "[I]f the plaintiff desired to predicate its right to recover damages upon

14  general loss of custom[ers], it should have alleged facts showing an established

15  business, the amount of sales for a substantial period preceding the publication, the

16  amount of sales subsequent to the publication, [and] facts showing that such loss in

17  sales were the natural and probable result of such publication." *New.Net, Inc.*, 356 F.

18  Supp. 2d at 1113 (alterations in original) (citation omitted).

19        Here, SteelHouse only alleges it has "lost clients, lost advertising budgets, and

20  los[t] potential clients" and seeks "actual and special damages in an amount to be

21  proven at trial."  (ACC ¶ 113.)  The allegations are the exact type of trade libel

22  damages allegations routinely rejected by the courts.  *See, e.g.*, *New.Net, Inc.*, 356 F.

23  Supp. 2d at 1113; *Code Rebel, LLC*, 2013 WL 5405706, at *5 (rejecting allegation

24

25  [3]     To the extent SteelHouse's conclusory allegations are based on the allegations
Criteo makes in its complaint in this case, SteelHouse's trade libel claim would

26  plainly run afoul of the absolute litigation privilege afforded to allegations in a
complaint.  *See, e.g.*, *Jarrow Formulas, Inc. v. LaMarche*, 31 Cal. 4th 728, 744 (2003)

27  (the "litigation privilege 'poses a clear bar' to actions based on statements made in
litigation"); *Rosenthal v. Irell & Manella*, 135 Cal. App. 3d 121, 125 (1982) (noting

28  that absolute litigation privilege bars interference with contract or prospective
economic advantage claims premised on statements in judicial proceedings).

1  plaintiff "sustain[ed] damages in excess of $100,000.00," where plaintiff
2  "acknowledges that the exact amount will be proven at trial," and "does not allege the
3  amount of business it had prior to Defendant allegedly making these statements, how
4  much it had after those statements were made, or the value of the business").

5              7.    The Court Should Dismiss The ACC With Prejudice

6         The deficiencies in the ACC warrant dismissal with prejudice.  The parties have
7  met and conferred twice on SteelHouse's counterclaims.  Criteo moved to dismiss the
8  Counter-Complaint which SteelHouse chose not to oppose, conceding the defects in
9  the Counter-Complaint.  However, as shown above, the ACC suffers from many of
10 the same defects identified in Criteo's first motion to dismiss, including but not
11 limited to:  (1) failure to plead adequately that Criteo fraudulently inflates its click
12 count numbers; (2) failure to sufficiently allege SteelHouse relied on any alleged false
13 advertisements by Criteo; (3) failure to allege Criteo actually induced a breach of
14 specific contractual obligations owed by e-tail clients to SteelHouse; (4) failure to
15 allege an independently wrongful act to support its claim for intentional interference
16 with prospective business relations; and (5) failure to plead adequately that Criteo
17 made false statements to SteelHouse customers about SteelHouse's admitted
18 misconduct.  These continued deficiencies warrant dismissal with prejudice.  *See, e.g.*,
19 *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051–52 (9th Cir. 2008) (holding
20 amendment would be futile where plaintiff was granted leave to amend once and
21 amended complaint contained same defects as the prior complaint); *Segura v. Felker*,
22 2010 WL 1689160, at *4 (E.D. Cal. Apr. 26, 2010) (same).

23    **B.    SteelHouse's Affirmative Defenses Should Be Stricken**

24        A motion to strike under Federal Rule of Civil Procedure 12(f) is well taken
25 when it has "the effect of making the trial of the action less complicated, or ha[s] the
26 effect of otherwise streamlining the ultimate resolution of the action."  *State of Cal. ex*
27 *rel. State Lands Comm'n v. United States*, 512 F. Supp. 36, 38 (N.D. Cal. 1981).
28        <u>First</u>, SteelHouse's First, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth

1   Affirmative Defenses should be stricken because they are not actually affirmative

2   defenses.[4]  *See Vogel v. OM ABS, Inc.*, 2014 WL 340662, at *3 (C.D. Cal. Jan. 30,

3   2014).  "Affirmative defenses plead matters extraneous to the plaintiff's *prima facie*

4   case, which deny the plaintiff's right to recover even if the allegations of the

5   complaint are true."  *J & J Sports*, 2010 WL 5173717, at *2.  An assertion that a

6   plaintiff has not met its burden of proof is not an affirmative defense.  *Id.*

7          Second, SteelHouse's Eleventh and Twelfth Affirmative Defenses should be

8   stricken because SteelHouse failed to allege facts satisfying the pleading requirements

9   of Federal Rule of Civil Procedure 8 as articulated in *Iqbal* and *Twombly*.  *See Spann*

10  *v. J.C. Penney Corp.*, 2015 WL 11072165, at *3 (C.D. Cal. July 16, 2015) ("'The

11  court can see no reason why the same principles applied to pleading claims should not

12  apply to the pleading of affirmative defenses which are also governed by Rule 8.'"

13  (citation omitted)).  "Under the *Iqbal* standard, the burden is on the *defendant* to

14  proffer sufficient facts and law to support an affirmative defense, and not on the

15  plaintiff to gamble on interpreting an insufficient defense in the manner defendant

16  intended."  *CTF Dev., Inc. v. Penta Hosp., LLC*, 2009 WL 3517617, at *8 (N.D. Cal.

17  Oct. 26, 2009) (emphasis in original).

18         Thus, SteelHouse was required:  (1) to plead facts that support its affirmative

19  defenses, *see, e.g.*, *OM ABS*, 2014 WL 340662, at *2; and (2) to inform Criteo as to

20  which claim(s) each affirmative defense applies, *see, e.g.*, *Gonzalez v. Preferred*

21

22  ────────────────
[4]     *See UMG Recordings, Inc.*, 117 F. Supp. 3d at 1116-17 (competition privilege

23  not an affirmative defense because it is "plaintiff's burden to prove, as an element of
    the cause of action itself, that the defendant's conduct was independently wrongful.")
    (citation omitted); *OM ABS*, 2014 WL 340662, at *2 (failure to state a claim not

24  affirmative defense); *Dodson v. CSK Auto, Inc.*, 2013 WL 3942002, at *4 (E.D. Cal.
    July 30, 2013) (standing not affirmative defense but an "element of plaintiff's prima

25  facie case"); *J & J Sports*, 2010 WL 5173717, at *2-3 (striking a defense of
    "reasonable, just, and proper acts" because it merely tries to "demonstrate[] that

26  plaintiff has not met its burden of proof" and defenses of intervening causes and lack
    of causation because they simply assert that plaintiff "has not or cannot prove the

27  element of causation"); *G & G Closed Circuit Events, LLC v. Nguyen*, 2010 WL
    3749284, at *5 (N.D. Cal. Sept. 23, 2010) (striking "lack of damages" and "lack of

28  allegations entitling Plaintiff to punitive damages" as "merely denials of the
    allegations and claims set forth in the Complaint").

22

*Freezer Servs., LBF, LLC*, 2012 WL 2602882, at *3 (C.D. Cal. July 5, 2012) (striking affirmative defenses where defendant failed "to link its . . . defenses to the particular claims for relief to which it purportedly applies"). SteelHouse failed to do so.

As to SteelHouse's Eleventh Affirmative Defense, it does not identify the supposed indispensable third party, thus providing Criteo with no notice as to its alleged error. *See Sec. People v. Classic Woodworking, LLC*, 2005 WL 645592, at *5 (N.D. Cal. Mar. 4, 2005) (striking affirmative defense for failure to provide fair notice as it did not "allege the name of any party who must be joined").

As to the Twelfth Affirmative Defense, SteelHouse does not allege any facts identifying which of SteelHouse's statements challenged in Criteo's Complaint SteelHouse asserts were truthful. Both affirmative defenses should be stricken.

<u>Third</u>, SteelHouse's Second Affirmative Defense (Waiver, Estoppel, Laches) alleges that Criteo should be estopped from bringing suit because prior to the litigation, Criteo allegedly "wanted to resolve this dispute 'amicably' and that if SteelHouse did as Criteo wished, the dispute would go away." (*See* Amended Answer ¶ 117.) SteelHouse then supposedly changed its code in reliance on this representation. (*Id.*) This allegation is plainly insufficient.

To establish an affirmative defense of waiver, SteelHouse must show Criteo's "intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it." *E & J Gallo Winery v. Grenade Beverage, LLC*, 2014 WL 1747688, at *3 (E.D. Cal. Apr. 30, 2014) (striking an affirmative defense of waiver for insufficient pleading). The waiver must be "manifested in an unequivocal manner." *Id.* SteelHouse has not alleged Criteo engaged in any "unequivocal" act to waive its ability to pursue legal claims against SteelHouse. "Without supporting factual allegations, Defendants' assertion that the doctrine of waiver is applicable is insufficient to provide fair notice." *J & J Sports*, 2010 WL 5173717, at *3-4.

To establish an affirmative defense of estoppel, SteelHouse must plead and prove that Criteo "either intentionally or under circumstances that induced reliance,

1  engaged in conduct upon which [SteelHouse] relied and that [SteelHouse] acted or

2  changed [its] position to [its] detriment."  *Desert European Motorcars, Ltd. v. Desert*

3  *European Motorcars, Inc.*, 2011 WL 3809933, at *3 (C.D. Cal. Aug. 25, 2011) (last

4  two alterations in original).  SteelHouse must also allege a "definite misrepresentation

5  of fact" Criteo made to SteelHouse "with reason to believe that [SteelHouse] would

6  rely on it."  *Solis v. Couturier*, 2009 WL 2022343, at *2 (E.D. Cal. July 8, 2009).

7      SteelHouse does not adequately allege any misrepresentation. SteelHouse

8  admits that the last statement made by Criteo prior to this litigation was a cease-and-

9  desist letter on May 23, 2016, requesting SteelHouse to stop its ongoing misconduct.

10  (Amended Answer ¶ 58.)  Thus, any alleged representation by Criteo that "the dispute

11  would go away" if "SteelHouse did as Criteo wished" was not a misrepresentation

12  when Criteo continued—and still continues—to believe that SteelHouse's misconduct

13  has not stopped; particularly when SteelHouse itself admits it has not stopped

14  fraudulently inflating its performance by taking click credit for direct internet traffic to

15  an e-tailers website (*see* Douglas Decl. ¶¶ 30, 45-46, 49-51).

16      Nor does SteelHouse allege detrimental reliance.  SteelHouse admits that its

17  tracking pixel conflicted with Criteo's (Amended Answer ¶ 53) and that there was "an

18  inadvertent bug."  (7/25/16 Decl. of Christopher Innes (Dkt. 19-6) ¶ 29.)  Thus, any

19  alleged reliance on Criteo's representations that involved changing SteelHouse's code

20  was not to SteelHouse's detriment; rather, by its own admission, it involved correcting

21  a "bug," thereby allowing SteelHouse to improve its own coding operations.

22      As to laches, this is "an equitable affirmative defense available for actions that

23  do not have a specific applicable statute of limitations."  *Foster v. Metro. Life Ins. Co.*,

24  243 F. App'x 208, 209-10 (9th Cir. 2007).  Here, SteelHouse does not allege that any

25  of Criteo's causes of action are not subject to statute of limitations.

26      In any event, even if SteelHouse made such a showing, "[t]o establish laches a

27  defendant must prove both an unreasonable delay by the plaintiff and prejudice to

28  itself."  *Couveau*, 218 F.3d at 1083.  Here, SteelHouse alleges Criteo delayed bringing

1   suit "for months."  (Amended Answer ¶ 117.)  Case law dictates that a few months is

2   insufficient to constitute an unreasonable delay.  *See, e.g.*, *Karl Storz Endoscopy-Am.,*

3   *Inc. v. Surgical Techs., Inc.*, 285 F.3d 848, 857 (9th Cir. 2002) (two years not

4   unreasonable delay to bring Lanham Act and UCL claims).  SteelHouse also fails to

5   plead any facts suggesting how this delay has been prejudicial, because it cannot.

6   SteelHouse's Second Affirmative Defense should be stricken.

7       Fourth, Steel House's Third Affirmative Defense (Unclean Hands) should be

8   stricken because any alleged wrongdoing by Criteo is wholly separate from

9   SteelHouse's unlawful acts.  This affirmative defense is defective because

10  "[m]isconduct . . . unrelated to the claim to which it is asserted as a defense[], does not

11  constitute unclean hands . . . What is material is not that the plaintiff's hands are

12  dirtied, but that he dirtied them in acquiring the right he now seeks to assert."  *Xilinx,*

13  *Inc. v. Altera Corp.*, 1994 WL 782236, at *3-4 (N.D. Cal. Feb. 8, 1994) (citing

14  *Republic Molding Corp. v. B.W. Photo Utils.*, 319 F.2d 347, 349 (9th Cir. 1963)).

15  SteelHouse's claims allege independent misconduct by Criteo that is completely

16  separate from the claims in Criteo's Complaint.  SteelHouse makes no assertion that

17  Criteo "dirtied" its hands via SteelHouse's counterfeit click fraud or SteelHouse's

18  dissemination of false advertisements trumpeting the results of tainted head-to-head

19  competitions.

20  **IV.   CONCLUSION**

21      For the foregoing reasons, Criteo respectfully requests that this Court grant

22  Criteo's motion to dismiss SteelHouse's Amended Counterclaims and to strike

23  SteelHouse's affirmative defenses.

24  DATED:  October 4, 2016     Respectfully submitted,

25                            By:  _____*/s/ Jack P. DiCanio*_____

26                                 JACK P. DICANIO
                                   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
27                                 Attorneys for Plaintiff and Counter-Defendant Criteo S.A.

28

Criteo S.A.'s Motion To Dismiss Amended Counterclaims And Strike Affirmative Defenses