UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-4207-SVW-MRWx | Date | October 26, 2016 |
|---|---|---|---|
| Title | *Criteo S.A. v. Steel House, Inc.* | | |

| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE |
|---|---|

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings:** IN CHAMBERS ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION [14]

Having read and considered the papers presented by the parties, the Court finds this matter suitable for determination without oral argument. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing scheduled for October 31, 2016 at 1:30 p.m. is VACATED and OFF CALENDAR.

I. **INTRODUCTION**

Plaintiff Criteo ("Criteo") filed this complaint on June 13, 2016, against Defendant SteelHouse ("SteelHouse"). Criteo and SteelHouse are performance-based online marketing vendors. Dkt. 14 at 1. Criteo claims their performance is evaluated on (1) whether internet shoppers make a purchase after clicking the online advertisements Criteo and SteelHouse place, and (2) the client's return on ad spend. *Id.* SteelHouse claims its performance is based on a "view-through" attribution model which tracks when a user sees an ad and then visits the website for that ad, even if they did not click on the ad directly. Dkt. 19 at 7.

Criteo alleges that SteelHouse has engaged in a counterfeit click fraud scheme, whereby SteelHouse takes the credit for when a consumer clicks on an ad placed by Criteo or another competitor.

:

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-4207-SVW-MRWx | Date | October 26, 2016 |
|---|---|---|---|
| Title | *Criteo S.A. v. Steel House, Inc.* | | |

Dkt. 14 at 1.[1] Further, Criteo alleges that SteelHouse fraudulently takes credit for "direct traffic" (when a consumer types the URL of a company into the browser and thus no advertisement was clicked). *Id.* Through this fraud scheme, SteelHouse gives the false impression it outperforms Criteo in this industry, both generally and in head-to-head competitions. *Id.*

## II.   MOTION FOR PRELIMINARY INJUNCTION

### A. Statement of Facts

On July 1, 2016, Criteo filed a motion for a preliminary injunction. Dkt. 14. In it, Criteo alleges that the parties often compete in head-to-head comparisons to earn the business of a client (or "e-tailer"). *Id.* at 1. SteelHouse has at least once contacted e-tailers and told them that SteelHouse consistently tests ahead of Criteo in performance. *Id.* at 5. Criteo alleges this is false and misleading, since SteelHouse allegedly cheated by using counterfeit clicks. *Id.* at 18.

Earlier this year, Criteo conducted data log analysis to determine how SteelHouse outperformed them in a head-to-head comparison for TOMS Shoes. *Id.* at 7. Criteo discovered an unusually large amount of SteelHouse clicks occurred with 30 seconds of a Criteo click. *Id.* These appeared fraudulent since it would be highly unusual for a consumer to click two ads for the same e-tailer within 30 seconds. *Id.* Criteo alleges that SteelHouse embedded a website within a website ("iFrame") so that when a customer went to an e-tailer site, no matter how they got there, the website would load an identical copy that the customer could not see that had SteelHouse's attribution code. *Id.* at 8–9. The iFrame would erase itself within 10 seconds, but the website now tracked the click as belonging to SteelHouse. *Id.* at 9. Criteo continued their investigation and found the alleged fraud was not limited to TOMS, but extended across a wide array of Criteo clients and extended to other industry competitors with SteelHouse, such as Google,

---

[1] It is undisputed that SteelHouse ceased engaging in this activity. *See* dkt. 19 at 10; dkt. 25 at 11. Criteo notes, however, that SteelHouse could reengage in this activity at any time. Dkt. 25 at 11.

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-4207-SVW-MRWx | Date | October 26, 2016 |
|---|---|---|---|
| Title | *Criteo S.A. v. Steel House, Inc.* | | |

Facebook, Bing, Twitter, and Pinterest. *Id.* The alleged fraudulent activity dates back to at least May 2015. *Id.*

Criteo confronted SteelHouse with the findings. *Id.* at 10-13. SteelHouse said it was a bug and that they would investigate and fix it. *Id.* On May 6, 2016, SteelHouse said they had fixed the issue. *Id.* Criteo monitored a head-to-head competition between themselves and SteelHouse for Nike between May 9-May 13 and found that fraudulent activity was still occurring. *Id.* Specifically, Criteo found that SteelHouse stopped counterfeiting clicks when a Criteo ad was clicked on, but continued to counterfeit clicks from direct traffic. *Id.* Criteo claims "[t]his change made SteelHouse's fraud more difficult to detect because it inflated Steelhouse's conversion rate without simultaneously suppressing Criteo's conversion rate (*i.e.*, the percent of clicks attributed to Criteo that resulted in a sale by the e-tailer)." *Id.* at 13. On May 23, 2016, Criteo sent a cease-and-desist letter to SteelHouse to stop counterfeiting clicks. *Id.* On June 8, Criteo discovered the activity continued. *Id.* Five days later they filed this suit.

### B. Harm to Criteo

Criteo alleges they lost existing and potential business, suffered reputational harm, and lost goodwill due to SteelHouse counterfeiting clicks. *Id.* at 14. They specifically claim that they lost clients as a result of losing head-to-head competitions with SteelHouse in which SteelHouse cheated. *Id.* At the time of filing this motion, Criteo states there were nine head-to-head competitions occurring between itself and SteelHouse. *Id.* at 15. Criteo argues that unless SteelHouse's counterfeit click scheme is enjoined, Criteo will continue to suffer irreparable harm.

### C. Legal Standards

A preliminary injunction should be granted if Criteo shows: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of an injunction; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. *See Winter. Nat. Res. Def. Council*, 555

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 16-4207-SVW-MRWx | Date | October 26, 2016 |
| Title | Criteo S.A. v. Steel House, Inc. | | |

U.S. 7, 20 (2008). The Ninth Circuit applies a sliding scale to the extent that "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). In other words, the Court cannot apply the sliding scale in issuing a preliminary injunction to allow a showing of only the *possibility* of harm. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009). Irreparable harm must be *likely*. *Id.* The moving party must do more than just *plead* imminent harm, it must *show* "immediate threatened injury." *Caribbean Marine Servs. v. Baldrige*, 844 F.2d 668, 674 (9th Cir.1988); *see also Friends of the Wild Swan v. Weber*, 767 F.3d 936, 946 (9th Cir. 2014).

### D. Analysis

Based on the exhibits and declarations, this Court finds that Criteo has raised "serious questions" going to the merits. However, Criteo has not satisfied its burden to show that irreparable and immediate harm is likely. In essence, Criteo argues that absent an injunction, it will continue to suffer loss of goodwill, reputation, and the business of current and prospective customers. Dkt. 14 at 21. Indeed, some courts have found that the loss of goodwill and reputation satisfy the irreparable harm requirement. *See, e.g., Hunter Consulting, Inc. v. Beas*, No. SACV 12-1947 AG (JPRx), 2012 WL 6193381, at *4–5 (C.D. Ca. Dec. 10, 2012) (finding irreparable harm when the misappropriation of plaintiff's trade secrets caused goodwill and reputational harm to plaintiff). In general, these cases stand for the idea that "intangible injuries" that are "incapable of measurement" could constitute irreparable harm, and that damage to goodwill or reputation can be within this category of "intangible injuries." *See Design Furnishings, Inc. v. Zen Path, LLC*, No. CIV. 2:10-2765 WBS GGH, 2010 WL 5418893, at *6 (E.D. Cal. Dec. 23, 2010), *Qwest Commc'ns Corp. v. City of Berkeley*, 146 F. Supp. 2d 1081, 1102 (N.D. Cal. 2001).

No authority holds, however, that a court must *always* find that damage to goodwill or reputation

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-4207-SVW-MRWx | Date | October 26, 2016 |
|---|---|---|---|
| Title | *Criteo S.A. v. Steel House, Inc.* | | |

satisfies the irreparable harm requirement. Many courts have accepted that a loss of reputation will befall plaintiff, but have still found that plaintiff has not shown a likelihood of irreparable harm. *See, e.g.*, *Ebates Performance Mktg. v. Integral Techs., Inc.*, No. 12-CV-06488-YGR, 2013 WL 75929, at *2 (N.D. Cal. Jan. 4, 2013) ("As to the of loss of reputation and erosion of customer trust, the Court is not persuaded that any loss of trust from customers . . . cannot be regained." (internal quotation marks omitted)); *see also Network Indus., Inc. v. Aktiengesellschaft*, No. 11CV49 DMS BLM, 2011 WL 219546, at *2 (S.D. Cal. Jan. 24, 2011) (finding that irreparable harm was not demonstrated by allegations of loss of goodwill accompanied with a customer declaration stating "I will never do business with your company again"). This Court does not believe the loss of customers for Criteo constitutes the type of irreparable harm, incapable of measurement, needed to justify the extraordinary relief of a preliminary injunction.

SteelHouse claims, and Criteo does not dispute, that SteelHouse's activities affect an insubstantial amount of Criteo clients. *See* dkt. 19 at 3, 6, 25; dkt. 43 at 9 (stating overlapping clients is less than 1%).[2] Further, if Criteo is successful on the merits, it would be easy to identify which clients switched from Criteo to SteelHouse and thus the loss of clients could be "measured" for purposes of assessing damages. These damages will be *capable* of measurement. The "possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974) (internal citation and quotations omitted).

Criteo says there is a need for immediate relief since there are nine head-to-head comparisons between Criteo and SteelHouse. *Id.* at 24. However, this assertion was made in filing the original motion

---

[2] This Court recognizes that SteelHouse's conduct can affect e-tailers that are not overlapping clients. But there is simply no evidence in the record that shows SteelHouse is threatening Criteo's market share or otherwise aggressively recruiting Criteo customers.

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-4207-SVW-MRWx | Date | October 26, 2016 |
|---|---|---|---|
| Title | *Criteo S.A. v. Steel House, Inc.* | | |

on July 1, 2016. This supposed irreparable harm did not prevent Criteo from stipulating to modify the briefing schedule for this motion in order to push back the hearing date, or prevent them from asking this Court at the eleventh hour to vacate a hearing on this motion, further delaying its disposition.[3] Now, nearly four months after the initial motion, any imminent harm that was facing Criteo in July has likely already occurred, and any possibility of future harm is speculative. Further, this is simply not a case where plaintiff needs immediate injunctive relief to remain a viable and competitive participant in the industry. Criteo can sustain any speculative monetary injuries, and seek full relief after a decision on the merits.

### III. CONCLUSION

The Court finds that Criteo has failed to show a likelihood of irreparable harm. The sliding scale employed by the Ninth Circuit does not allow a likelihood of success on the merits to lessen a showing of irreparable harm. *Stormans, Inc.*, 586 F.3d at 1127. Thus, failing to establish irreparable harm is reason enough to deny a preliminary injunction. *See, e.g., Network Indus.*, 2011 WL 219546 at *2 ("Plaintiff falls short of meeting its burden of demonstrating it is likely to suffer irreparable harm in the absence of preliminary relief and Plaintiff's motion must be denied. Because the Court denies Plaintiff's motion on this basis, it need not reach the remaining elements."). This Court DENIES Plaintiff's motion for a preliminary injunction.

---

[3] A delay in seeking injunctive relief can show "a lack of urgency and irreparable harm." *See Dahl v. Swift Distrib., Inc.*, No. CV 10-00551 SJO(RZX), 2010 WL 1458957, at *3 (C.D. Cal. Apr. 1, 2010) (internal citations omitted). This Court accepts Criteo's explanation of the delay between January, 2016 and filing this case in June, 2016, and the explanation for the short delay between filing this case and moving for a preliminary injunction. However, Criteo has not offered a compelling explanation for its complacency in delaying the disposition of this motion for several months.

Initials of Preparer  :

PMC